# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| ZACHERY WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.  2:16-cv-00634-MHH-SGC |
| | ) |
| RODERICK GADSON, | ) |
| | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* amended complaint seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 40).  The only remaining defendant in this matter is Correctional Officer Roderick Gadson.  (*See* Doc. 70).  The plaintiff seeks compensatory and punitive damages, as well as declaratory relief.  (Doc. 40 at 5).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I. Procedural History

On December 11, 2017, the court entered an Order for Special Report directing the Clerk to forward copies of the amended complaint to each of the named defendants and directing the defendants to file a special report addressing

the plaintiff's factual allegations. (Doc. 42; *see also* Docs. 44, 45). The order advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would considered it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. (Doc. 42).

On March 26, 2018, the defendants filed a special report, supplemented by affidavits and other evidence. (Doc. 54; *see also* Docs. 55, 56). On May 23, 2018, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 59). The order also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On June 1, 2018, the plaintiff filed a response and supplement thereto. (Docs. 60, 61). Since that time, all defendants, except Officer Gadson, have been dismissed from this action. (Docs. 68, 70).

## II. Standard of Review

Because the court has construed the defendant's special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts

The plaintiff is an Alabama inmate currently housed at Holman Correctional Facility in Atmore, Alabama. However, the events made the basis of the plaintiff's claims occurred at Donaldson Correctional Facility in Bessemer, Alabama. According to the plaintiff, the first incident occurred on April 12, 2016, when Officer Gadson allegedly "discharged chemical agent directly in [the plaintiff's] face" and "minorly" assaulted him while his hands were cuffed behind his back. (Doc. 40 at 12).[1] In a written statement made on an Alabama Department of Corrections Use of Force form, the plaintiff described the incident by stating Officer Gadson appeared at the plaintiff's cell to escort him to a dentist

---

[1] The amended complaint identifies the date as April 15, 2016, but a written incident report submitted by the plaintiff and the special report confirm the date was April 12, 2016. (Doc. 54).

appointment, cuffed the plaintiff's hands behind his back, sprayed the plaintiff "point blank" in the face with chemical agent, grabbed the plaintiff by the collar, repeatedly struck him in the face with his fist, and cursed at the plaintiff.  (Doc. 54-3).  Officer Gadson then allegedly "yanked and aggressively jostled [the plaintiff] out of [his] cell and down the steps."  (*Id.*).  After this incident, Officer Gadson and another officer allegedly "began personalizing, dehumanizing, and degrading the plaintiff" and repeatedly threatened him with bodily harm.  (Doc. 40 at 12).   The plaintiff contends prison administrators' failure to "remedy and/or fix the situation" led to Officer Gadson's "malicious assault upon the plaintiff on April 12, 2017."  (*Id.*).[2]

One year later, on April 12, 2017, Officer Gadson and two other officers (TeShaura Turnbull and Keller Speaks) unlocked the plaintiff's cell door and ordered the plaintiff's cellmate to leave, after which Officer Turnbull began punching the plaintiff in the face. (Doc. 40 at 13; Doc. 61 at 30).[3]  While Officer Speaks held the plaintiff in a "bear hug," Officers Gadson and Turnbull "took turns" repeatedly punching the plaintiff's head, nose, mouth, and left eye. (*Id.*). Officer Speaks then lifted the plaintiff into the air and "slammed" him to the ground, where Officer Gadson and the other officers began "kicking and

---

[2] It is not entirely clear what is meant by this assertion other than the suggestion Officer Gadson was emboldened by his apparent ability to mistreat the plaintiff without consequence, which led to the second assault in April of 2017.

[3] Although initially named as defendants, Officers Turnbull and Speaks have been dismissed from this action.  (*See* Docs. 68, 70).

stomping" on the plaintiff's shoulders and arms while he laid in a fetal position and was "bleeding real bad all over the floor." (*Id*.; Doc. 44).[4] Officer Gadson then repeatedly taunted the plaintiff by saying, "[F]ile a lawsuit on this too rapist mother****r" and sprayed the plaintiff directly in the face with a "3 to 5 seconds burst of chemical agent." (*Id*.). The plaintiff suffered several injuries, including contusions, abrasions, cracked and chipped teeth, a laceration to his upper lip, and an injured finger and shoulder. (*Id.*).

The special report paints a different picture of the events made the basis of the plaintiff's claims. In his personal affidavit, Officer Gadson denies in very general terms the events of April 12, 2016, simply stating the allegations are "not true." (Doc. 54-8). He makes no effort to explain the April 12, 2016 "body chart" prepared by prison medical staff that notes the plaintiff was taken to the infirmary for "[e]yes red from being sprayed." (Doc. 54-2). However, the special report includes a "Duty Officer Report" and an "Incident Report" addressing the events of April 12, 2016. (Doc. 54-1). According to the reports, Officer Gadson and another officer were attempting to escort the plaintiff from his segregation cell to the infirmary when the plaintiff approached Officer Gadson and said, "I will spit

---

[4] Officer Speaks testified he was not a part of the events that day. (Doc. 54-6). He stated that on the day in question he was working on a different unit and at no time did he enter the plaintiff's cell area. (*Id*.). As noted *infra*, it appears the third officer involved was Officer Cunningham, not Officer Turnbull. Officer Cunningham has never been a party to this action. (*See* Doc. 64).

on your bitch ass." (*Id*. at 1-2).[5] At that point, Officer Gadson ordered the plaintiff to stop and return to his assigned cell, but the plaintiff "refused this direct order." (*Id.* at 1-2). Officer Gadson then administered a "one (1) second burst of Sabre Red spray to the face of inmate Wilson." (*Id.* at 1-2). When questioned by a correctional sargeant, the plaintiff denied attempting to spit on Officer Gadson and accused Officer Gadson of punching and choking him and pushing him down stairs. (*Id.* at 2).

With regard to the April 12, 2017 incident, Officer Gadson states he was assisting in securing inmates into their assigned cells when he heard a commotion coming from the plaintiff's cell. (Doc. 54-8). Officer Gadson proceeded to the plaintiff's cell, where he "observed inmate Wilson viciously assaulting [Officer Turnbull] while lying on his back on the bottom rack, repeatedly kicking [Officer Turnbull] and causing her shirt to tear." (*Id*.). Officer Gadson and Officer Cunningham entered the plaintiff's cell and "took inmate Wilson to the floor," where he was handcuffed. (*Id*.).[6] The plaintiff was then assisted to his feet and escorted to the infirmary. (*Id.*).[7]

---

[5] The reports state the plaintiff "appeared to be attempting to collect saliva in his mouth" while continuing to approach. (Doc. 54-1 at 1-2).

[6] According to the incident report, as he was being taken to the floor, the plaintiff "landed face first and began to bleed profusely from the facial area." (Doc. 54-4).

[7] The "body chart" prepared by the medical staff indicates the plaintiff suffered contusions, abrasions, lacerations, and redness on at least nine places on his body. (Doc. 54-5).

7

Officer Turnbull testified that as she was securing the plaintiff's cell door, she "observed a piece of belt in the locking mechanism" and began to remove it when the plaintiff stood up from his bed and stated, "[A]int shit in the door." (Doc. 54-7). The plaintiff refused Officer Turnbull's order to return to his bed and instead approached Officer Turnbull with his fists clenched, at which point Officer Turnbull sprayed the plaintiff with mace. (*Id.*). The spray was ineffective, as a result of which the plaintiff charged Officer Turnbull and the two began to struggle as Officer Turnbull attempted to take the plaintiff to the floor. (*Id.*). Officer Turnbull stated that "a short time later several officers arrived and pulled him off of me and took him to the floor." (*Id.*).

The special report also contains an affidavit from Officer Cunningham, who allegedly assisted in gaining control over the plaintiff. (Doc. 55-1). Officer Cunningham states he heard a commotion coming from the vicinity of the plaintiff's cell and ran to assist. (*Id.*). When he arrived at the plaintiff's cell, he "observed [the plaintiff] … and [Officer Turnbull] in a physical altercation." (*Id.*). He states he and Officer Gadson immediately took the plaintiff to the floor, where the plaintiff landed face first and began to bleed from the facial area. (*Id.*).[8] The plaintiff was then handcuffed and escorted to the infirmary. (*Id.*).

---

[8] In his written report of the incident, Officer Cunningham states he observed the plaintiff lying on his back on the bottom bunk repeatedly kicking Officer Turnbull. (Doc. 54-10). At that point, Officer Cunningham "entered the cell and grabbed [the plaintiff] by the legs and pulled

## IV. Analysis

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When force is applied by prison officials, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline or was carried out maliciously or sadistically for the purpose of causing harm. *Id.* at 320. In *Hudson v. McMillian*, the Supreme Court set out factors that should be considered in evaluating whether the use of force was wanton and unnecessary, including 1) the need for the application of force, 2) the relationship between the need and the amount of force used, 3) the threat reasonably perceived by the prison official, 4) any efforts made to temper the severity of a forceful response, and 5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).

Applying these standards to the record before the court, it is clear genuine issues of material fact exist with respect to the plaintiff's excessive force claims. Although Officer Gadson justifies the need for force on both occasions by alleging aggressive actions by the plaintiff, genuine issues of material fact exist with respect

---

him to the floor." (*Id.*). Officer Cunningham states that as the plaintiff was being pulled to the floor, he "contorted his body during the fall and landed face first." (*Id.*). In his sworn amended complaint, the plaintiff states unequivocally he was not violating any departmental rule and that "[a]t no point or time while [he] was being maliciously assaulted did [he] punch or kick Officer Turnbull." (Doc. 40 at 15).

9

to the need for the use of force.  In both instances, the plaintiff alleges an unprovoked attack by Officer Gadson, with other officers joining in on the April 2017 incident. The special report accuses the plaintiff of attempting to spit on Officer Gadson during the April 2016 incident and of attacking another officer during the April 2017 incident.  However, these allegations merely present the court with a dispute that must be resolved by the trier of fact.

Genuine issues of material fact also exist with respect to the second *Hudson* factor (i.e., the relationship between the need for the use of force and the amount of force used). With regard to the April 2016 incident, the plaintiff states he was handcuffed when Officer Gadson sprayed him with mace and punched him repeatedly in the face while cursing at him.  (Doc. 54-3).  Even taking as true the allegation the plaintiff threatened to spit on Officer Gadson, a reasonable jury could find Officer Gadson's actions exceeded the need for the use of force under the circumstances and were undertaken for reasons other than a good faith effort to restore security or discipline.

Likewise, there exist genuine issues of material fact regarding the April 2017 incident with respect to the second *Hudson* factor. The plaintiff denies assaulting Officer Turnbull and states he posed no threat to the officers on that date. (Doc. 61 at 30).  He accuses the three officers of "maliciously and sadistically" beating and kicking him while deriding him as a "rapist

10

mother****r." (Doc. 40 at 13). Even if some initial force was justified, the plaintiff alleges Officer Gadson continued to kick and stomp him as he lay in the floor in a fetal position. (*Id*.). At the very least, a reasonable jury could find Officer Gadson's use of force exceeded the need for force under the circumstances.

The third *Hudson* factor requires this court to analyze the threat reasonably perceived by the officers. Genuine issues of material fact exist with regard to this factor, as well. Based on the record before the undersigned, a reasonable jury could find Officer Gadson acted unreasonably in concluding the plaintiff presented a threat commensurate with the severe physical response taken against him. For each incident, the plaintiff makes allegations which at least imply an intent on the part of Officer Gadson other than to maintain discipline and security in good faith.

There also remain genuine issues of material fact with regard to the fifth *Hudson* factor, which requires the court to analyze any efforts to temper the severity of the response. Although Officer Gadson denies in general terms the April 2016 incident and contends the plaintiff was handcuffed and taken to the infirmary after officers gained control over him in April 2017, the record contains factual allegations which demonstrate the plaintiff was subjected to gratuitous force on both occasions. Based on the record as presented, a jury could find Officer Gadson failed to temper the severity of his response.

11

With regard to the final *Hudson* factor, it is undisputed the plaintiff suffered more than de minimis injury following the April 2017 incident. As noted above, the medical record indicates numerous injuries at multiple locations on the plaintiff's body. Indeed, even Officer Gadson acknowledges "more force than de minimis was utilized to return [the plaintiff] to the control of the correctional officers." (Doc. 54 at 24). Furthermore, these injuries, as described in the medical records, are not only numerous but appear to be consistent with the allegations of force described by the plaintiff.

This fifth *Hudson* factor is less clear with regard to the April 2016 incident. The plaintiff acknowledges in the complaint that he was "minorly" assaulted on that occasion. (Doc. 40 at 12). However, it is well settled a lack of serious injury does not preclude an excessive force claim where the force is otherwise objectively unreasonable. In other words, "...objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002). Based on plaintiff's assertions regarding the April 2016 incident, there exists a genuine issue of material fact with regard to whether Officer Gadson's use of force was merely gratuitous on that occasion. *See Wilkins v. Gaddy*, 559 U.S. 34,   37 (2010) ("When prison officials maliciously and sadistically use force to cause harm, … contemporary standards of decency always

12

are violated ... whether or not significant injury is evident.").  Resolution of that issue should be left to the trier of fact.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment filed on behalf of Officer Gadson (Doc. 54) be **DENIED**. The undersigned **FURTHER RECOMMENDS** this matter be **REFERRED** to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those

13

same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DONE** this 30th day of September, 2019.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE

14